**Altman**
LAW & POLICY

**KURT M. ALTMAN, P.L.C**.
Kurt M. Altman (015603)
12621 N. Tatum Blvd., #102
Phoenix, AZ 85032
Admin@altmanaz.com
Phone: (602) 689-5100
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-24-00394-PHX-SPL-2 |
| Plaintiff, | |
| v. | **DEFENDANT AJAK'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR SELECTIVE PROSECUTION IN VIOLATION OF THE EQUAL PROTECTION COMPONENT OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT; OR IN THE ALTERNATIVE, DEFENDANT AJAK'S MOTION FOR DISCOVERY AS TO PROSECUTORIAL INTENT** |
| Peter Biar Ajak, | |
| Defendant. | |
| | (Oral Argument and Evidentiary Hearing Requested) |

Peter Biar Ajak, by and through undersigned counsel, files this Reply to the Government's Response to Defendant's Selective Prosecution Motion.

This Reply and its requested relief are supported by the attached Memorandum of Points and Authorities.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion.

RESPECTFULLY SUBMITTED this 16th day of July 2025.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*
Kurt M. Altman
*Attorney for Defendant*

I hereby certify that on the 16th day of July 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov

Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov

M. Bridget Minder
Assistant United States Attorney
Bridget.Minder@usdoj.gov

Richard C. Bock
lingemanbock@qwestoffice.net

Dominic James Rizzi
Rizzilawaz@gmail.com
Attorneys for Defendant Keech

By: */s/ Kurt M. Altman*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PROCEDURAL BACKGROUND:**

On March 1, 2024, Mr. Ajak (and his co-defendant, Mr. Abraham Chol Keech) were arrested by agents of the Department of Homeland Security while visiting Phoenix, Arizona. The arrest was based on a federal criminal complaint signed by United States Magistrate Judge Michael T. Morrissey on February 29, 2024. The complaint included three violations of United States criminal code. Count One alleged a violation of 22 U.S.C. §§ 2778(b)(2), (c), Conspiracy to Violate the Arms Export Control Act (AECA) and the International Traffic in Arms Regulations (ITAR); Count Two alleged a violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(D), and 4819(b), Conspiracy to Violate the Export Control Reform Act (ECRA) and the Export Administration Regulations (EAR); and Count Three alleged a violation of 18 U.S.C. § 544(a), Smuggling of Goods from the United States.

Mr. Ajak had his initial appearance on March 4, 2024, before United States Magistrate Judge Deborah M. Fine, and she set a Detention Hearing for March 8, 2024. After filing of the Indictment (ECF No. 14) on March 6, 2024, which alleged identical allegations as the criminal complaint, an Arraignment and Detention Hearing were held on March 15, 2024, before United States Magistrate Judge Eileen S. Willett.

On April 30, 2025, the Grand Jury issued a Superseding Indictment against Mr. Ajak and his co-defendant, again charging them with four violations of Federal law: Count 1, Conspiracy, in violation of 18 U.S.C. § 371; Count 2, Conspiracy to Violate the Export Control Reform Act (ECRA) and the Export Administration Regulations (EAR), in violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(D), and 4819(b); Count 3, Smuggling of Goods from the United States, in violation of 18 U.S.C. § 554(a); and Count 4, Conspiracy to Export Missile Systems designed to Destroy Aircraft, in

violation of 18 U.S.C. §§ 2332g(a)(1), 2332(b)(1), and 2332g(c)(1). Both defendants were arraigned on May 7, 2025.

## II.    DISCRIMINATORY EFFECT:

Pages 3 through 7 of the Government's Response to Defendant's Selective Prosecution Motion (DKT 128) lay out detailed facts of both defendant Ajak and Keech's conduct that the Government believes will be proved at trial. However, nowhere within the Response does the Government dispute the co-conspirators'[1] factual involvement as detailed in Mr. Ajak's Motion to Dismiss for Selective Prosecution (DKT 87). One co-conspirator (co-conspirator #1), knowing details of the overall plan, actively participated in the conspiracy. Co-conspirator #1 met with Mr. Ajak and others, on numerous occasions, and worked to secure sources of funding for the weapons. He was integrally aware of the alleged plan and was even provided details through a PowerPoint presentation that was shown in the New York City offices of the Paul Hastings law firm. He used his position with the Human Rights Foundation to conceal the true purpose of the money that *he* acquired from the funder *he* personally recruited. He also used his political clout to set up meetings that others could not. The alleged conspiracy was impossible without his participation.

Another co-conspirator (co-conspirator #2) was recruited, provided knowledge of the plan, and agreed to finance the purchase of military grade weapons to aid in the installation of a democratic government in South Sudan. He had the willingness and ability to provide the financing for the plan, and he agreed to do so. Without the significant financing of co-conspirator #2, the alleged conspiracy would have been impossible.

---

[1] For purposes of this Reply, Mr. Ajak will refer to all four co-conspirators identified in his original Motion to Dismiss collectively as "co-conspirators."

Another co-conspirator (co-conspirator #3) is an attorney, and she was deeply involved in the alleged conspiracy in this matter. She arranged, scheduled, attended, and coordinated activities at numerous in-person planning meetings of the alleged co-conspirators. Those meetings included not only herself but the other unindicted co-conspirators. During those meetings, every aspect of the alleged conspiracy was discussed—*Who could provide financing and how to get it. What type of weapons may be needed and where they could be purchased. What equipment was needed on the ground in South Sudan and how to get it there. What personnel were required both here in the United States and in the South Sudan to make the transition successful.* She reviewed a PowerPoint presentation that laid out the plan for installation of a new government in South Sudan and made suggestions and advised of possible pitfalls and ramifications of that plan. She drafted the contract, termed "Donation Agreement," that was used to transfer the money provided by co-conspirator #2. Her internet research history shows she conducted searches for "coup" in a foreign land and researched the potential legal ramifications of such in the United States. The alleged conspiracy was *impossible* without her significant contributions.

Finally, another co-conspirator (co-conspirator #4) was heavily involved in and knowledgeable of the plan. He had the public relation skills to assist in publicly promoting the new democratic government once installed. He conveyed to the other co-conspirators that he was instrumental in doing this type of work previously in the country of Gabon. He alluded to the other co-conspirators that he worked for, or closely with, the Central Intelligence Agency and that his participation in the plan would be essential to United States government support moving forward after installation of a new government in South Sudan. He attended meetings of the co-conspirators, planned, strategized, and was provided a copy of the PowerPoint presentation laying out the plan. He was even paid for his active contributions to the conspiracy.

In its Response, the Government ignores the involvement of all the co-conspirators and argues that Defendant cannot show discriminatory effect because these four individuals are not "similarly situated" to defendants who were "ringleaders." It is true that to obtain a dismissal of a prosecution based on violation of the Due Process Clause of the Fifth Amendment, the defendant must establish two things by "clear evidence." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). First, that the decision to prosecute "had a discriminatory effect and, [second,] that it was motivated by a discriminatory purpose." *Id.* at 465. "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals from a different race were not prosecuted." *Id.*, *citing Ah Sin v. Whittman,* 198 U.S. 500 (1905).

Considering the involvement of the four co-conspirators, the Government's argument that they were not "similarly situated" fails. "Conspiracy" is "a combination of confederacy between two or more persons formed for the purpose of committing, by their *joint efforts* some unlawful or criminal act."   https://www.latestlaws.com/wp-content/uploads/2015/04/Blacks-Law-Dictionery.pdf Without the *joint efforts* of all the co-conspirators the conspiracy to purchase weapons and conduct a coup in South Sudan could not have come to fruition. Members of a conspiracy, by definition, carry out different roles, but each one is necessary to achieve the goal.

That is the case here. According to the Government, Mr. Ajak and Mr. Keech played vital roles. But they could not and did not operate in a silo, and their roles were no more vital than the co-conspirators because without them the project was impossible. To accept the Government's argument is like saying a baseball pitcher, a vital member and even a leader of a baseball team, is the entire reason the team won a championship. However, that pitcher alone couldn't win any game without the equally important though different efforts of the catcher, the outfielders, the infielders, or the coach. Each player, though operating in a different role, is vital to the overall *joint effort* required to achieve

their goal.  That is the same situation the co-conspirators are in here.  Each had a different role, but each role was vital to the overall *joint effort* to accomplish the goal of the conspiracy.  That makes the co-conspirators' involvement in this alleged crime similarly situated to the involvement of both Ajak and Keech.  Each co-conspirator was an indispensable part of the conspiracy, necessary for its overall success.  The co-conspirators' involvement was just as serious criminal conduct as the alleged involvement of Defendants.  The only fathomable distinction is the color of their skin.

The Government's reliance on *United States v. Rundo,* 108 F.4th 792 (9th Cir. 2024) is misplaced.  As the Government points out, the defendants in that case argued that other groups were not prosecuted for similar conduct because of their "far-left-wing" political views, while defendants faced prosecution only because they held opposing political views.  *See Rundo,* 108 F.4th at 801-03.  However, unlike in this case, the *Rundo* defendants were not part of the same conspiracy as the individuals who were not prosecuted.  The unprosecuted "far-left-wing" activists were not vital to the *joint effort* of the *Rundo* defendants.  Here, the co-conspirators were part of the same alleged conspiracy, and they were vital to its ongoing efforts and success.  Here, the co-conspirators' conduct was just as criminally serious, making them similarly situated to Defendants.  The only distinction is they are not black.  Therefore, based on the undisputed conduct of the co-conspirators, the Government's decision to only charge the black members of the conspiracy establishes the discriminatory effect required in a selective prosecution claim.  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals from a different race were not prosecuted." *Armstrong*, 517 U.S. at 465 (*citing Ah Sin v. Whittman,* 198 U.S. 500 (1905)).

**III.    DISCRIMINATORY PURPOSE:**

As discussed in Mr. Ajak's Motion to Dismiss (DKT 87), the second requirement of a

successful selective prosecution claim—discriminatory purpose—also exists in this case. "The goal of identifying a similarly situated class of law breakers is to isolate the factor allegedly subject to impermissible discrimination. The similarly situated group is the control group." *United States v. Wilson,* 123 F.4th 1021, 1027 (2024). Here, the defendants are the same in all relevant aspects with members of the control group except for the isolated factor of their skin color. "If all other things are equal, the prosecution of only those persons exercising their constitutional rights gives rise to an inference of discrimination." *Id.* at 1028. In this case, all other things are equal and based on the undisputed facts, the only people being prosecuted are those of a different skin color. On its face, there is no other explanation for the selective purpose of the prosecution.

At a minimum, a prima facie showing has been made that the purpose of the prosecution violates the 5th Amendment, enough to exceed the "some evidence" standard to receive discovery on the issue. Discovery related to selective prosecution allegations will be granted only if defendants first demonstrate "some evidence" of discriminatory effect and discriminatory intent. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). While the discovery standard applicable to selective prosecution claims in federal court is rigorous, it is "less stringent" than that required to prove a selective prosecution claim on the merits. *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001). As one court observed, "defendants need not establish a prima facie case of selective prosecution to obtain discovery on these issues." *Id*. Based on the uncontroverted facts in Mr. Ajak's Motion and Reply, there is some evidence of discriminatory purpose. Enough so to reach the threshold to allow discovery as to the motivation behind the prosecution.

**IV.   CONCLUSION:**

For the reasons stated in this Reply to the Government's Response to Selective Prosecution Motion and those stated in Ajak's Motion to Dismiss the Superseding Indictment for Selective Prosecution in Violation of the Equal Protection Component of the Due Process Clause of the Fifth Amendment, or in the alternative, Motion for Discovery as to Prosecutorial Intent, Defendant Peter Biar Ajak, respectfully requests that the Court grant the Motion to Dismiss, or in the alternative, the Motion for Discovery as to Prosecutorial Intent.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion.

RESPECTFULLY SUBMITTED this 16th day of July 2025.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*_____
Kurt M. Altman
*Attorney for Defendant*

I hereby certify that on the 16th day of July 2025,
I electronically transmitted the attached
document to the Clerk's Office using the
CM/ECF system for filing and transmittal
of a Notice of Electronic Filing to the
following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov
Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov

M. Bridget Minder
Assistant United States Attorney
Bridget.Minder@usdoj.gov

Richard C. Bock
lingemanbock@qwestoffice.net
Attorney for Defendant Keech

Dominic James Rizzi
Rizzilawaz@gmail.com
Attorney for Defendant Keech


By: */s/ Kurt M. Altman*_____