TIMOTHY COURCHAINE
United States Attorney
District of Arizona
AMY C. CHANG
Arizona State Bar No. 027566
RAYMOND K. WOO
Arizona State Bar No. 023050
M. BRIDGET MINDER
Arizona State Bar No. 023356
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: amy.chang@usdoj.gov
Email: raymond.woo@usdoj.gov
Email: bridget.minder@usdoj.gov

JOHN EISENBERG
Assistant Attorney General
National Security Division
LESLIE C. ESBROOK
New York State Bar No. 5406301
District of Columbia Bar No. 1670737
CHRISTOPHER M. COOK
District of Columbia Bar No. 90013354
Trial Attorneys
Counterintelligence and Export Control Section
950 Pennsylvania Ave, NW
Washington, DC 20530
Email: Leslie.Esbrook@usdoj.gov
Email: Christopher.Cook7@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-00394-PHX-SPL-002 |
| Plaintiff, | |
| vs. | **UNITED STATES' REPLY IN SUPPORT OF ITS OBJECTION TO DRAFT PRESENTENCE INVESTIGATION REPORT** |
| Peter Biar Ajak, | |
| Defendant. | |

In his Response (Doc. 173), defendant Peter Biar Ajak argues he was not an organizer and leader of the conspiracy because (1) he was involved in the conspiracy for

only four months; (2) other co-conspirators "were essential" to the scheme; and (3) his participation was not for his own benefit. These contentions are inaccurate, unpersuasive, or both. Regardless of when defendant joined the conspiracy—or who else was involved or benefited from the scheme—defendant was the clear leader. For the reasons discussed below and in the government's Objection (Doc. 170), the Court should reject defendant's arguments and impose a two-level Aggravating Role enhancement.

### I. Four-month participation does not diminish defendant's aggravated role.

Defendant argues that because he did not become involved in the conspiracy until November 2023, he could not have served as a leader or organizer. (Doc. 173 at 3-4.) He claims that his four-month participation in the scheme makes him a "sacrificial pawn, rather than a leader." (*Id.*) Such an assertion, however, is meritless. As an initial matter, defendant's participation was not isolated, fleeting, or short-lived. Rather, he engaged repeatedly and continuously with the UCs, his co-defendant, and others for at least four months to illegally procure and export weapons to start a coup in South Sudan.

Furthermore, neither the Sentencing Guidelines nor the commentary to § 3B1.1 require a defendant to serve as a leader or organizer for any minimum amount of time to qualify for the enhancement. *See* U.S.S.G. § 3B1.1; *see also United States v. Romer*, 797 Fed. App'x 192, 197-98 (6th Cir. 2019) (holding that U.S.S.G. § 3B1.1 contains no "temporal factor in determining whether the enhancement applies," and upholding a three-level enhancement when defendant served as a manager or supervisor for only one day); *cf. United States v. Trigg*, 119 F.3d 493, 503-04 (7th Cir. 1997) (upholding district court's denial of defendant's requested minor role adjustment when defendant—who was "involved in the conspiracy for only part of its total life"—was nevertheless "fully involved" during the time of his participation). Thus, even if defendant was involved in only a portion of the total life of the charged conspiracy (i.e., four of the twelve months

charged in the Superseding Indictment), the extent and degree of his participation amply support the enhancement.[1]  (*See* Doc. 170 at 3-7.)

## II.  Participation by others does not diminish defendant's aggravated role.

Defendant next argues that other individuals were "essential to the recruiting, planning, concealing, and execution of the weapons purchase," and that the conduct of these other individuals diminishes his own role in the offense. (Doc. 173 at 4.) Defendant's argument ignores that conspiracies necessarily involve multiple people who are essential to the conspiracy but are not leaders. Defendant's specific claims are unpersuasive for the following reasons:

- *Recruiting the financier.*  First, defendant argues he "did not recruit the funder for the project." (Doc. 173 at 4.)  Even assuming this is true, defendant met with the financier; signed a Donation Agreement with the financier; prepared a fictitious report regarding his purported disbursements for the financier; and most importantly, spent the financier's money on export-controlled weapons. (Doc. 170 at 4; *see also* Doc. 60 at 10-11.)
- *Concealing the payments.*  Defendant next claims he "did not devise a plan to conceal the source of the money." (Doc. 173 at 4.)  This assertion is inaccurate.  Defendant directed the UCs to prepare a fake security services invoice to conceal the transaction (and provided the specific language used in the invoice); signed the fake invoice to mislead the banks; and structured the payments so as to "avoid a bank review."[2]  (Doc. 170 at 4-5.)

---

[1] In addition, as noted in the government's Objection (Doc. 170 at 3-4), Keech's early efforts to complete a purchase and export with the UCs had stalled by fall 2023; it was not until defendant's involvement that the project gained funding and momentum. *See United States v. Motz*, 936 F.2d 1021, 1026 (9th Cir. 1991) (affirming two-level upward adjustment when district court found defendant was the leader of the conspiracy because "without [defendant] there would not have been financial backing for the operation").

[2] During his post-arrest interview, defendant admitted that "[he] asked [UC-1] to make a different contract," and acknowledged that while it was "both of our ideas," he provided the language for the fake invoice. (Bates 5198; 11734 – 883.)

- *Coordinating the meetings.* Defendant further asserts he did not coordinate the planning and strategy meetings, which were hosted at another individual's office. (Doc. 173 at 4.) Regardless of the meetings' location, defendant participated in these meetings, and engaged in dozens of other telephone calls, in-person meetings, and text messages with the UCs regarding the charged weapons export scheme. (Doc. 170 at 3.)
- *False contracts and bank transfers.* Finally, defendant claims that "[f]alse contracts were drafted" and "[b]ank transfers were arranged" as "directed by others." (Doc. 173 at 4.) What he omits, however, is that the "false contracts were drafted" *with language supplied by defendant and that defendant signed these contracts himself.*[3] Similarly, "bank transfers were arranged" *at defendant's direction and were used to pay the UCs, his co-defendant, and himself and his family*. (Doc. 170 at 5-6.)

In sum, even assuming that other individuals participated in various aspects of the scheme, their participation does not diminish defendant's central role in the planning, organizing, and commission of the offense.

**III.    Conditions in South Sudan do not diminish defendant's aggravated role.**

Finally, defendant describes the difficult history and challenging present and future of South Sudan. (Doc. 173 at 5-8.) He contends that he participated in the scheme not for his own benefit, but to improve the lives of the South Sudanese people. Two things, however, can be true. It can be true that South Sudan has and continues to face long-term challenges and inequities that are painfully borne by the South Sudanese people; it can also

---

[3] During his post-arrest interview, defendant admitted that in addition to the fake security services invoice described above, he also "convinced somebody to … give [him] money" after he told the financer he "wanted to restore human rights, to engage in humanitarian activities, and civic activities in South Sudan." Defendant explained that the financier did not "know what the real effort [was]," adding, "There is the part that I have told him. And there is one that I am doing." (Bates 5198; 11734 – 883.)

be true that in seeking to improve their lives, defendant simultaneously sought to become the new "head of government" and anticipated a larger share of the fruits of the crime.

During his post-arrest interview, defendant explained that he intended to return to South Sudan to "agitate" for a popular uprising and armed takeover of the country. He also detailed his plan for inciting the popular uprising. He noted that the current South Sudanese government had made it known that it did not have tear gas or rubber bullets, and that the military would respond to popular protests with live ammunition. Defendant therefore "wanted … to create a situation where people were going to protest," and anticipated that the South Sudanese government "would probably shoot people down," resulting in outrage that would "spark a revolution." He explained that the weapons obtained from the UCs would then be used to arm elements of the military that would fight to support the protestors. (Bates 5198; 11734-883.)

Thus, had his plans unfolded as he intended, defendant's ascension to power could have potentially contributed to armed violence, displacement, and destabilization throughout South Sudan, the very concerns animating the export controls in the first place. *See, e.g.*, United Nations Security Council, Resolution 2428 and subsequent renewals (imposing an arms embargo on South Sudan and expressing "concern over the continued intensification of violence prolonging the political, security, economic, and humanitarian crisis in most parts of the country"; the "increased violence between armed groups … which has killed and displaced thousands"; and the "threat to peace and security in South Sudan arising from the illicit transfer, destabilizing accumulation and misuse of small arms and light weapons"). Defendant's Response fails to acknowledge these consequences. Because defendant—irrespective of his long-term goals for the country—nevertheless anticipated a larger share of the fruits of the crime, this factor continues to weigh in favor of a leadership role enhancement.

//

//

For the foregoing reasons, the government respectfully asks the Court to include a two-level upward adjustment for defendant's aggravated role in the offense.

Respectfully submitted this 14th day of October, 2025.

>TIMOTHY COURCHAINE
>United States Attorney
>District of Arizona
>
>*s/Amy C. Chang*
>AMY C. CHANG
>RAYMOND K. WOO
>M. BRIDGET MINDER
>Assistant U.S. Attorneys
>
>LESLIE C. ESBROOK
>CHRISTOPHER M. COOK
>Trial Attorneys, National Security Division

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Kurt Altman, *Attorney for Peter Biar Ajak*

*s/Alexandria Gaulin*
U.S. Attorney's Office